Filed 3/3/14  Praetorian Ins. Co. v. The Dunnon Law Firm CA5

## <u>NOT TO BE PUBLISHED IN OFFICIAL REPORTS</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| PRAETORIAN INSURANCE COMPANY, Cross-complainant and Respondent, v. THE DUNNION LAW FIRM et al., Cross-defendants and Appellants. | F066590 (Super. Ct. No. 12CECG00482) **OPINION** |
| FRESNO COMMUNITY HOSPITAL AND MEDICAL CENTER, Plaintiff, v. PRAETORIAN INSURANCE et al., Defendants. | |

APPEAL from an order of the Superior Court of Fresno County.  Kristi Culver Kapetan, Judge.

The Dunnion Law Firm, Todd D. Reeves; Jeanine G. Strong for Cross-defendants and Appellants.

Yee & Belilove, Steven R. Yee, Steve R. Belilove and Austin S. Haigh for Cross-complainant and Respondent.

-ooOoo-

After a personal injury claimant and the insurer for the party allegedly responsible for the injury settled their dispute by mediation, the insurer was sued for failing to satisfy the medical lien of one of the injured party's health care providers.  The insurer cross-complained against the claimant's attorneys, asserting they falsely represented to the insurer during the mediation that the medical lien would be paid out of the settlement proceeds and it was not.  The attorneys appeal from the denial of their special motion to strike (Code Civ. Proc., § 425.16) the first amended cross-complaint, asserting the cross-complaint was based on protected activity—statements made during prelitigation settlement negotiations—and cross-complainant failed to demonstrate a probability it would prevail on the merits of its claims.  We agree as to all but one of the causes of action against the attorneys in the first amended cross-complaint.  Accordingly, we reverse the order.

### *FACTUAL AND PROCEDURAL BACKGROUND*

Genevieve Alvarado, a pedestrian, was allegedly injured when she was hit by a car driven by Nonette Rhoads.  On March 2, 2011, Alvarado, represented by attorney Todd Reeves and the Dunnion Law Firm (Dunnion), participated in mediation with Praetorian Insurance Company, Rhoads' insurer.  The parties reached an agreement to settle Alvarado's claim.  At the end of the mediation, the parties signed a one-page agreement; it indicated Alvarado would be responsible for all medical and hospital liens.  A formal written agreement was subsequently prepared and executed in April.  It provided:  "In the event of the existence of any outstanding liens, it is understood and agreed that [Alvarado] shall be responsible to satisfy any and all such liens and [Alvarado] shall indemnify and hold the INSURED and INSURER harmless from any and all claims made by lienholders, whether such claims have been made, or are in the future made."  Praetorian paid the settlement funds in a check written to Alvarado and Dunnion.

2

Fresno Community Hospital (FCH) filed a complaint against Praetorian and Dunnion, alleging it provided medical treatment to Alvarado after her accident, the cost of which was approximately $153,000; it gave notice of its medical lien to Praetorian, Alvarado, and Rhoads, but it was not paid out of the settlement proceeds or otherwise. FCH alleged one cause of action for enforcement of a hospital lien against Praetorian and causes of action for constructive trust, unjust enrichment, and money had and received against Dunnion.

Praetorian cross-complained against Dunnion, Alvarado, and Reeves, alleging causes of action for breach of contract, indemnity, declaratory relief, and fraud. The first amended cross-complaint alleged the settlement agreement contained a provision requiring Alvarado to be responsible to satisfy all liens; additionally, after the mediation had concluded, Reeves, on behalf of himself, Dunnion, and Alvarado, represented that the FCH lien would be paid from the settlement proceeds and he was in the process of negotiating the lien. Praetorian alleged that, had Reeves' representations not been made, it would not have agreed to the settlement. The first amended cross-complaint alleged that Praetorian issued a check to Alvarado and Dunnion, and the damages sought by FCH were directly attributable to cross-defendants' conduct.

Dunnion and Reeves responded by filing a special motion to strike the first amended cross-complaint pursuant to Code of Civil Procedure section 425.16[1] (an anti-SLAPP[2] motion). They asserted the claims made against them in the first amended cross-complaint arose out of alleged oral representations made during negotiation of a settlement that avoided litigation; they argued the oral representations constituted petitioning activity protected by section 425.16. Dunnion and Reeves also attempted to

---

[1] All further statutory references are to the Code of Civil Procedure unless otherwise indicated.

[2] SLAPP is an acronym for "strategic lawsuit against public participation." (*Equilon Enterprises v. Consumer Cause, Inc*. (2002) 29 Cal.4th 53, 57.)

3

demonstrate there was no probability Praetorian would prevail on its causes of action. Praetorian opposed the motion, citing *California Back Specialists Medical Group v. Rand* (2008) 160 Cal.App.4th 1032 (*CBSMG*), a case it asserted established that failure of an attorney to pay a medical lien out of settlement proceeds did not constitute protected petitioning activity. Relying on that case and others, the trial court denied the anti-SLAPP motion and imposed sanctions against Dunnion and Reeves for filing a frivolous motion. Dunnion and Reeves appeal.

## *DISCUSSION*

### I.    Standard of Review

An order granting or denying a special motion to strike is expressly made appealable by section 425.16, subdivision (i). "Review of an order granting or denying a motion to strike under section 425.16 is de novo. [Citation.] We consider 'the pleadings, and supporting and opposing affidavits … upon which the liability or defense is based.' [Citation.] However, we neither 'weigh credibility [nor] compare the weight of the evidence. Rather, [we] accept as true the evidence favorable to the plaintiff [citation] and evaluate the defendant's evidence only to determine if it has defeated that submitted by the plaintiff as a matter of law.' [Citation.]" (*Soukup v. Law Offices of Herbert Hafif* (2006) 39 Cal.4th 260, 269, fn. 3.)

### II.    The Anti-SLAPP Statute

"A special motion to strike is a procedural remedy to dispose of lawsuits brought to chill the valid exercise of a party's constitutional right of petition or free speech. [Citation.] The purpose of the anti-SLAPP statute is to encourage participation in matters of public significance and prevent meritless litigation designed to chill the exercise of First Amendment rights. [Citation.] The Legislature has declared that the statute must be 'construed broadly' to that end. [Citation.] [¶] A cause of action is subject to a special motion to strike if the defendant shows that the cause of action arises from an act in

4

furtherance of the defendant's constitutional right of petition or free speech in connection with a public issue and the plaintiff fails to demonstrate a probability of prevailing on the claim. [Citations.]" (*Digerati Holdings, LLC v. Young Money Entertainment, LLC* (2011) 194 Cal.App.4th 873, 882-883 (*Digerati*).)

The term "'act in furtherance of a person's right of petition or free speech … in connection with a public issue'" is defined to include: "(1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law; (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law; (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest; or (4) any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest." (§ 425.16, subd. (e).) If the person's activity falls within section 425.16, subdivision (e)(1) or (2), no separate showing that the statement was made "in connection with a public issue" is required. (*Digerati, supra*, 194 Cal.App.4th at p. 883.)

## III.  Anti-SLAPP Motion

Consideration of an anti-SLAPP motion requires a two-step process. "First, the court decides whether the defendant[3] has made a threshold showing that the challenged cause of action is one arising from protected activity. The moving defendant's burden is to demonstrate that the act or acts of which the plaintiff complains were taken 'in furtherance of the [defendant]'s right of petition or free speech.'" (*Equilon Enterprises v. Consumer Cause, Inc., supra,* 29 Cal.4th at p. 67.) If the moving defendant meets this

---

[3]    Section 425.16 applies to cross-complainants and cross-defendants the same as to plaintiffs and defendants. (§ 425.16, subd. (h).)

burden, the court must determine whether the plaintiff has shown a probability of prevailing on the claim. (*Ibid*.) "Only a cause of action that satisfies *both* prongs of the anti-SLAPP statute—i.e., that arises from protected speech or petitioning *and* lacks even minimal merit—is a SLAPP, subject to being stricken under the statute." (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 89 (*Navellier*).)

### A.     *Arising from protected activity*

A defendant meets its burden of showing that the challenged cause of action arises from protected activity "'by demonstrating that the act underlying the plaintiff's cause fits one of the categories spelled out in section 425.16, subdivision (e)' [citation]." (*Navellier, supra*, 29 Cal.4th at p. 88.) In this context, "arises from" means "based upon." (*Briggs v. Eden Council for Hope & Opportunity* (1999) 19 Cal.4th 1106, 1114.) "[T]he mere fact that an action was filed after protected activity took place does not mean the action arose from that activity for the purposes of the anti-SLAPP statute. [Citation.] Moreover, that a cause of action arguably may have been 'triggered' by protected activity does not entail that it is one arising from such. [Citation.] In the anti-SLAPP context, the critical consideration is whether the cause of action is *based on* the defendant's protected free speech or petitioning activity. (*Navellier, supra*, 29 Cal.4th at p. 89.)

The gravamen or principal thrust of the action determines whether the challenged cause of action arises from protected activity. (*Renewable Resources Coalition, Inc. v. Pebble Mines Corp.* (2013) 218 Cal.App.4th 384, 387, 396 (*Renewable Resources*).) The gravamen is the acts on which liability is based; it is "'the allegedly wrongful and injury-producing conduct that provides the foundation for the claims.'" (*Id*. at p. 396, italics omitted.) "'In deciding whether the "arising from" requirement is met, a court considers "the pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based." [Citation.]' [Citation.]" (*Seltzer v. Barnes* (2010) 182 Cal.App.4th 953, 962.) The "focus is not the form of the plaintiff's cause of action but,

6

rather, the defendant's *activity* that gives rise to his or her asserted liability—and whether that activity constitutes protected speech or petitioning." (*Navellier, supra*, 29 Cal.4th at p. 92.) The anti-SLAPP statute does not apply where protected activity is only collateral or incidental to the transaction or occurrence underlying the complaint. (*Wang v. Wal-Mart Real Estate Business Trust* (2007) 153 Cal.App.4th 790, 794.)

### 1. Breach of contract

The first cause of action of Praetorian's first amended cross-complaint alleges breach of a written settlement contract against Alvarado, Dunnion, and Reeves. The general allegations state that Rhoads, Praetorian, and Alvarado entered into the agreement, and the settlement agreement, attached as an exhibit to the first amended cross-complaint, identifies Rhoads, Praetorian, and Alvarado as the parties to the agreement. Nonetheless, the first cause of action is alleged against all cross-defendants, and states that "cross-defendants" executed the agreement and agreed to satisfy any and all liens relating to Alvarado's injuries from the incident. It alleges cross-defendants breached the contract by failing to comply with all laws and rules of conduct in performing their contractual duties, failing to satisfy the FCH lien, and failing to agree to indemnify Praetorian and hold it harmless from the claims of FCH. Thus, the first cause of action is based on an alleged failure to perform obligations under a contract. It is not based on any protected speech or petitioning activity.

In *Applied Business Software, Inc. v. Pacific Mortgage Exchange, Inc.* (2008) 164 Cal.App.4th 1108 (*Applied*), the plaintiff had sued the defendant in federal court for breach of contract and copyright infringement involving the use of the plaintiff's software. The parties mediated the dispute and entered into a settlement. (*Id*. at p. 1111.) Under the settlement agreement, the defendant was required to make certain payments to the plaintiff, cease using the plaintiff's software, and return all copies to the plaintiff with certification that it had done so and had deleted all copies from its computers. (*Id*. at

7

p. 1112.)  When the defendant failed to provide a proper certification, the plaintiff filed

an action against the defendant alleging breach of the settlement contract and seeking

injunctive relief and damages.  The defendant filed an anti-SLAPP motion, asserting the

action was brought in retaliation for the defendant filing a declaration in another federal

action on behalf of a company the plaintiff had sued.  (*Applied,* at p. 1114.)  The

defendant contended the action arose out of its protected activity of submitting a

declaration in the federal action.

> The court disagreed.

> "Defendant's acts on which plaintiff's complaint is based are defendant's
> alleged failure to provide the certification called for in the settlement
> agreement, and defendant's alleged use of plaintiff's software after the time
> set out in the settlement agreement for ceasing use of it.  Neither of those
> alleged actions by defendant can reasonably be said to have been taken by
> defendant in furtherance of its right of petition or free speech in connection
> with a public issue.  Therefore, it cannot reasonably be said that plaintiff's
> complaint arises from/is based on protected activities undertaken by
> defendant.…  The filing of that declaration is not what this case is based on.
> This is a breach of contract suit based solely on defendant's alleged failure
> to comply with specific provisions in the settlement agreement."  (*Applied,*
> *supra,* 164 Cal.App.4th at p. 1117.)

The court rejected the defendant's contention that, because settlement agreements

are writings made in judicial proceedings or in connection with issues under

consideration in judicial proceedings, and therefore are the product of acts taken in

furtherance of the party's right of petition, a suit brought by one of the parties against the

other to enforce the agreement is necessarily based on the defendant's protected activity.

(*Applied, supra*, 164 Cal.App.4th at p. 1117.)

> "Here, the gist of plaintiff's complaint is not that defendant did something
> wrong by acts committed during the course of the underlying federal action,
> but rather that defendant did something wrong by breaching the settlement
> agreement after the underlying action had been concluded.  Under the
> explanatory provisions in subdivision (e) of section 425.16, defendant's
> entering into the settlement agreement during the pendency of the federal

8

case was indeed a protected activity, but defendant's subsequent alleged breach of the settlement agreement after the federal case was concluded is not protected activity because it cannot be said that the alleged breaching activity was undertaken by defendant in furtherance of defendant's right of petition or free speech, as those rights are defined in section 425.16. Thus, the instant suit is based on alleged conduct of defendant that is *not* protected activity." (*Applied, supra*, 164 Cal.App.4th at p. 1118.)

Similarly, Praetorian's breach of contract cause of action alleges Dunnion and Reeves breached the settlement agreement by failing to ensure payment of the FCH lien was made out of the proceeds of the settlement check. The gravamen of this cause of action is not that Dunnion or Reeves did something wrong in the course of the mediation or the settlement of Alvarado's claim, but that they subsequently failed to perform as agreed in the settlement contract. Thus, "it cannot be said that the alleged breaching activity was undertaken by [Dunnion or Reeves] in furtherance of [their] right of petition or free speech." (*Applied, supra*, 164 Cal.App.4th at p. 1118.) The trial court did not err in concluding this cause of action is not subject to section 425.16.

### 2. Fraud

The ninth through eleventh causes of action of Praetorian's first amended cross-complaint alleged fraud against Dunnion and Reeves.[4] They allege that, after the March 2, 2011, mediation concluded, Reeves represented to Praetorian that the FCH lien would be paid from the settlement proceeds and that he was negotiating the lien. Praetorian alleges Reeves and Dunnion knew of the FCH lien at that time, but "knew the [FCH] lien would not be paid from settlement proceeds, and that Dunnion and Reeves was [*sic*] in fact not in the process of 'negotiating' said lien" or "had no intention of satisfying that the [FCH] lien." Praetorian alleges Reeves and Dunnion, by making the misrepresentation, intended to and did induce it to enter into the settlement agreement; Praetorian justifiably relied on the representation and was damaged when FCH sued it

---

[4]    The headings identify them as causes of action for fraud, intentional misrepresentation, and negligent misrepresentation, respectively.

9

and it was required to defend itself. Essentially, Praetorian alleges Reeves and Dunnion committed fraud by making a promise without an intention of performing it. (Civ. Code, §§ 1572, subd. (4), 1710, subd. (4).)

The gravamen or principal thrust of these causes of action—"'the allegedly wrongful and injury-producing conduct that provides the foundation for the claims'" (*Renewable Resources, supra,* 218 Cal.App.4th 396, italics omitted)— is the alleged false promise that Dunnion would pay the FCH lien out of the proceeds of Alvarado's settlement with Praetorian, when it had no intention of doing so. This allegedly resulted in the harm to Praetorian: it executed the settlement agreement, tendered payment to Alvarado and Dunnion, and was sued by FCH when the lien was not paid.

"Statements made before an 'official proceeding' or in connection with an issue under consideration or review by a legislative, executive, or judicial body, or in any other 'official proceeding,' as described in clauses (1) and (2) of section 425.16, subdivision (e), are not limited to statements made after the commencement of such a proceeding. Instead, statements made in anticipation of a court action or other official proceeding may be entitled to protection under the anti-SLAPP statute. '"[J]ust as communications preparatory to or in anticipation of the bringing of an action or other official proceeding are within the protection of the litigation privilege of Civil Code section 47, subdivision (b) [citation], … such statements are equally entitled to the benefits of section 425.16." [Citations.]' [Citations.]" (*Digerati, supra,* 194 Cal.App.4th at pp. 886-887.) "[A] prelitigation statement falls within clause (1) or (2) of section 425.16, subdivision (e) if the statement '"concern[s] the subject of the dispute" and is made "in anticipation of litigation 'contemplated in good faith and under serious consideration'" [citation].' [Citations.]" (*Digerati, supra*, at p. 887.)

Alvarado and her attorney, Reeves, met with Rhoads' attorney and representatives of her insurer, Praetorian, to mediate Alvarado's personal injury claim against Rhoads,

10

for damages arising out of an automobile-pedestrian accident. Although there is no evidence Alvarado or Reeves expressly threatened to sue Rhoads if Alvarado's claim was not settled, we would be hard pressed to interpret the mediation as anything other than an attempt to settle Alvarado's claim in order to avoid litigation that would have been filed if the matter had not settled.[5]

The alleged statements on which Praetorian's fraud causes of action are based concerned the subject of the dispute; they related to expenses incurred by Alvarado as a result of the injuries for which Rhoads was allegedly responsible, and the liens claimed by FCH to secure payment. Although the statements were allegedly made after the parties had reached their initial agreement to settle, the statements concerned that settlement, Praetorian asserts it relied on them in agreeing to settle, and the final written agreement had not yet been prepared.

The actionable wrong alleged in the fraud causes of action against Dunnion and Reeves was the alleged making of promises without intent to perform them. The alleged promises concerned the subject of the dispute and were made in the course of mediation conducted in anticipation of litigation. Consequently, we find that the statements that form the basis of Praetorian's fraud causes of action against Reeves and Dunnion fall within the protection of section 425.16. Reeves and Dunnion made the required threshold showing that the fraud causes of action arose from protected activity.

The trial court relied on *CBSMG* in ruling that Praetorian's claims, including its fraud claims, were not based on protected activity, and therefore should not be stricken pursuant to section 425.16. In *CBSMG*, Rand, an attorney, represented the injured parties in personal injury actions. (*CBSMG, supra*, 160 Cal.App.4th at p. 1035.) The plaintiffs had provided medical treatment to Rand's clients pursuant to liens on those actions.

---

[5]     The fact that Alvarado's claim was settled for almost $500,000 suggests her injuries were serious, her claim was substantial enough she would not have simply abandoned it if the mediation had been unsuccessful, and Praetorian understood this.

When the actions were resolved, Rand disbursed the proceeds without satisfying the plaintiffs' liens. The plaintiffs sued Rand for payment, alleging causes of action for breach of contract, breach of fiduciary duty, conversion, money had and received, and unjust enrichment. (*Ibid*.) The basis of the plaintiffs' claims was its allegation that Rand had signed the liens and was thereby bound to honor them. The liens stated that Rand, as attorney for the patients, agreed to the terms stated in the liens, agreed to withhold "such sum" from any settlement or judgment, and warranted that there was a fiduciary relationship between him and the lienholders regarding payment of the liens from any settlement or judgment. The liens bore a signature above Rand's name, but he denied signing them. (*Ibid*.) Rand filed an anti-SLAPP motion, which the trial court denied on the ground the plaintiffs' complaint did not arise from a protected activity. (*CBSMG,* at pp. 1035-1036.)

The court stated:

> "CBSMG's complaint is based on the underlying controversy between private parties about the validity and satisfaction of the liens. These issues were never under consideration in any court or official proceedings until CBSMG filed the current action.

> "Appellant contends his conduct with respect to the liens was protected activity because he disbursed the funds as an attorney and was representing his clients in the underlying actions. Not all attorney conduct in connection with litigation, or in the course of representing clients, is protected by section 425.16. [Citations.] The trial court correctly determined that CBSMG's claims did not arise from any act in furtherance of appellant's right to petition or his right to free speech." (*CBSMG, supra*, 160 Cal.App.4th at p. 1037.)

*CBSMG* is distinguishable from Praetorian's first amended cross-complaint for fraud against Dunnion and Reeves. In *CBSMG*, the lienholders sued Rand on an agreement he allegedly signed obligating him to pay the lienholders out of any settlement or judgment in the clients' actions. Rand's anti-SLAPP motion was aimed at the lienholders' action against him for breach of duties arising out of that agreement.

12

Apparently, the agreement was not an issue in the personal injury actions between Rand's clients and those responsible for their injuries. The basis of the lienholders' action was the agreement between Rand and the lienholders, which was a business transaction between those parties, made at a time when no litigation between them was contemplated.

The anti-SLAPP motion filed by Dunnion and Reeves did not challenge the claims of the lienholder, FCH; FCH did not allege any contract between it and Dunnion or Reeves obligating them to satisfy the FCH lien out of the proceeds of settlement.

The anti-SLAPP motion filed by Dunnion and Reeves challenged Praetorian's first amended cross-complaint. The fraud causes of action in that cross-complaint were based on alleged promises made by Dunnion and Reeves in the course of mediation between the personal injury claimant and the insurer of the party allegedly responsible for the claimant's injuries. Praetorian itself asserts the parties discussed the FCH lien and its payment during the parties' settlement discussion. Praetorian's fraud claims arose directly out of statements allegedly made by Reeves during the negotiation of a settlement between the parties to potential litigation. Thus, unlike the motion in *CBSMG*, the anti-SLAPP motion here did not address a business transaction separate from the personal injury litigation or claim.

Contrary to the conclusion of the trial court, *CBSMG* is not dispositive of the outcome of the motion of Dunnion and Reeves. The allegations of misrepresentations or false promises made during the course of settlement are central to Praetorian's fraud causes of action, not merely incidental or collateral. We conclude Dunnion and Reeves made a threshold showing that the fraud claims arose out of protected activity and are subject to section 425.16. Thus, the first prong of the test under section 425.16 was satisfied.

13

### 3. Indemnity and declaratory relief

The third, fourth, and fifth causes of action of Praetorian's first amended cross-complaint allege causes of action for implied indemnity, total equitable indemnity, and declaratory relief. The indemnity causes of action vaguely allege that the injuries FCH alleged in its complaint were proximately caused by the negligent, reckless, or intentional acts of Dunnion and Reeves. The declaratory relief cause of action seeks a declaration of the rights of Praetorian to indemnity or comparative contribution from Dunnion and Reeves. The only wrongful conduct alleged against Dunnion and Reeves as the basis for any such right to indemnity or contribution is the alleged making of false promises that Reeves and Dunnion would satisfy the FCH lien out of the proceeds of Alvarado's settlement. Dunnion and Reeves made the required threshold showing that these causes of action, like the fraud causes of action, are based on protected communications made during the prelitigation settlement of Alvarado's claims against Rhoads. Accordingly, the first prong of the anti-SLAPP test was satisfied as to these causes of action also.

### B. *Probability of prevailing*

Once the court determines that the defendant has made a threshold showing that the challenged cause of action is one arising from protected activity, it must then determine whether the plaintiff has demonstrated a probability of prevailing on that cause of action. (*HMS Capital, Inc. v. Lawyers Title Co*. (2004) 118 Cal.App.4th 204, 211.) The burden is on the plaintiff to show such a probability. (*Ibid*.) "[I]n order to establish the requisite probability of prevailing [citation], the plaintiff need only have '"stated and substantiated a legally sufficient claim."' [Citations.] 'Put another way, the plaintiff "must demonstrate that the complaint is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited."' [Citations.]" (*Navellier, supra,* 29 Cal.4th at pp. 88-89.)

14

"'Promissory fraud' is a subspecies of the action for fraud and deceit. A promise to do something necessarily implies the intention to perform; hence, where a promise is made without such intention, there is an implied misrepresentation of fact that may be actionable fraud. [Citations.]" (*Lazar v. Superior Court* (1996) 12 Cal.4th 631, 638.) The elements of promissory fraud are: "'(1) a promise made regarding a material fact without any intention of performing it; (2) the existence of the intent not to perform at the time the promise was made; (3) intent to deceive or induce the promisee to enter into a transaction; (4) reasonable reliance by the promisee; (5) nonperformance by the party making the promise; and (6) resulting damage to the promise[e].' [Citation.]" (*Rossberg v. Bank of America, N.A.* (2013) 219 Cal.App.4th 1481, 1498.)

### 1. Negligent misrepresentation

Praetorian has not alleged a viable claim of negligent misrepresentation. The elements of a cause of action for negligent misrepresentation include a misrepresentation of a past or existing fact, without reasonable grounds for believing it to be true. (*Thrifty Payless, Inc. v. The Americana at Brand, LLC* (2013) 218 Cal.App.4th 1230, 1239.) Praetorian's eleventh cause of action does not allege this. It alleges Reeves represented the FCH lien would be paid from the settlement proceeds, but he and Dunnion had no intent of satisfying that lien. It does not allege a misrepresentation of existing fact, but a promise to perform an act in the future.

"To maintain an action for deceit based on a false promise, one must specifically allege and prove, among other things, that the promisor did not intend to perform at the time he or she made the promise and that it was intended to deceive or induce the promisee to do or not do a particular thing. [Citations.] Given this requirement, an action based on a false promise is simply a type of *intentional* misrepresentation, i.e., actual fraud. The specific intent requirement also precludes pleading a false promise claim as a negligent misrepresentation, i.e., 'The assertion, as a fact, of that which is not

15

true, by one who has no reasonable ground for believing it to be true.' [Citation.] Simply put, making a promise with an honest but unreasonable intent to perform is wholly different from making one with no intent to perform and, therefore, does not constitute a false promise. Moreover, we decline to establish a new type of actionable deceit: the negligent false promise." (*Tarmann v. State Farm Mut. Auto. Ins. Co.* (1991) 2 Cal.App.4th 153, 159, fn. omitted.)

Praetorian's eleventh cause of action fails to allege an actionable negligent misrepresentation; a cause of action for negligent false promise is not legally cognizable. Consequently, Praetorian has not shown a probability of prevailing on this cause of action, because it has not stated or substantiated a legally sufficient claim.

### 2. Fraud and intentional misrepresentation

The substance of the allegations of the ninth and tenth causes of action for fraud and intentional misrepresentation is the same.[6] They allege Reeves, on behalf of himself, Dunnion, and Alvarado, represented to Praetorian and others that the FCH lien would be paid out of the proceeds of Alvarado's settlement and Reeves was in the process of negotiating the lien. Praetorian alleges Reeves and Dunnion had knowledge of the lien, knew and intended that it would not be paid, and made the representation to induce Praetorian to enter into the settlement agreement.

Dunnion and Reeves assert Praetorian cannot prevail on its causes of action against them because the litigation privilege of Civil Code section 47, subdivision (b), precludes liability. The litigation privilege "'may present a substantive defense plaintiff must overcome to demonstrate a probability of prevailing.'" (*Rohde v. Wolf* (2007) 154 Cal.App.4th 28, 38.) "'The usual formulation is that the privilege applies to any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other

---

[6]     The tenth cause of action also incorporates by reference all the allegations of the ninth cause of action.

16

participants authorized by law; (3) to achieve the objects of the litigation; and (4) that have some connection or logical relation to the action. [Citations.]' [Citation.]" (*Home Ins. Co. v. Zurich Ins. Co.* (2002) 96 Cal.App.4th 17, 23-24 (*Home Ins*.).)

The litigation privilege furthers several policies: it "afford[s] litigants and witnesses [citation] the utmost freedom of access to the courts without fear of being harassed subsequently by derivative tort actions." (*Silberg v. Anderson* (1990) 50 Cal.3d 205, 213.) "The privilege also promotes complete and truthful testimony, encourages zealous advocacy, gives finality to judgments, and avoids unending litigation. [Citation.]" (*Budwin v. American Psychological Assn*. (1994) 24 Cal App.4th 875, 880.) The privilege originally applied only to defamation actions, but has since been extended to any communication and all torts other than malicious prosecution, including fraud[7] and negligent misrepresentation. (*Budwin,* at p. 880.)

The litigation privilege has also been extended to communications that have some relation to anticipated litigation. (*Aronson v. Kinsella* (1997) 58 Cal.App.4th 254, 262.) It "'arises at the point in time when litigation is no longer a mere possibility, but has instead ripened into a proposed proceeding that is actually contemplated in good faith and under serious consideration as a means of obtaining access to the courts for the purpose of resolving the dispute.'" (*Haneline Pacific Properties, LLC v. May* (2008) 167 Cal.App.4th 311, 319 (*Haneline*).) The privilege applies to statements made by counsel during settlement negotiations. (*Home Ins., supra*, 96 Cal.App.4th at p. 24.) "Settlements of disputes have long been favored by the courts and attorneys should be accorded wide latitude in making statements during settlement negotiations. [Citations.] Protecting attorneys during the course of the representation of their clients is necessary to

---

**7** The litigation privilege applies to a legal action for damages for fraud. It does not apply to an equitable action to set aside a settlement agreement for extrinsic fraud. (*Home Ins., supra*, 96 Cal.App.4th at p. 26; *Navarro v. IHOP Properties, Inc.* (2005) 134 Cal.App.4th 834, 844.) Praetorian's cross-complaint, however, does not contain a cause of action seeking to set aside the settlement agreement based on extrinsic fraud.

promote the litigants securing free access to the courts.  [Citation.]" (*Asia Investment Co. v. Borowski* (1982) 133 Cal.App.3d 832, 843.)

The parties mediated Alvarado's claim against Rhoads under circumstances indicating litigation was "'actually contemplated in good faith and under serious consideration.'" (*Haneline, supra*, 167 Cal.App.4th at p. 319.)  Praetorian alleges Dunnion and Reeves made promises in the course of that mediation on which Praetorian relied in settling.  Those alleged promises related to the subject of the anticipated litigation; they concerned Alvarado's payment of liens that were part of the damages incurred by her and placed in issue by her personal injury claim against Rhoads.  Accordingly, Praetorian has not demonstrated a probability of prevailing under the anti-SLAPP statute, because the statements fell within the protection of the litigation privilege.  The trial court erred in denying the special motion to strike the ninth and tenth causes of action of Praetorian's first amended cross-complaint.

### 3. Indemnity and declaratory relief

Like the fraud causes of action, the causes of action for indemnity and declaratory relief are based on allegations that Dunnion and Reeves made false promises on which Praetorian relied in entering into the settlement of Alvarado's claim against Rhoads.  The alleged false promises were made during the mediation, carried out in anticipation of litigation, and are therefore protected by the litigation privilege.  Praetorian has not demonstrated a probability of prevailing on these causes of action, and the trial court erred in denying the special motion to strike the third, fourth, and fifth causes of action of the first amended cross-complaint.

## IV. Sanctions

Pursuant to sections 425.16 and 128.5, the trial court imposed sanctions of $2,410.45 against Dunnion and Reeves for bringing a frivolous motion to strike.  Section 425.16, subdivision (c)(1), authorizes the trial court to award costs and attorney fees to a

prevailing plaintiff, pursuant to section 128.5, if the trial court finds the motion to strike "is frivolous or is solely intended to cause unnecessary delay."  "Frivolous" is defined by section 128.5 to mean "(A) totally and completely without merit or (B) for the sole purpose of harassing an opposing party."  (§ 128.5, subd. (b)(2).)  In light of our conclusion the special motion to strike had merit and should have been granted as to all but one of the first amended cross-complaint's causes of action against Dunnion and Reeves, we conclude the motion was not frivolous and sanctions should not have been imposed.

## *DISPOSITION*

The order denying the special motion to strike Praetorian's first amended cross-complaint and imposing sanctions against Dunnion and Reeves for filing a frivolous motion is reversed, with directions to the trial court to enter a new and different order granting the motion as to the third, fourth, fifth, ninth, tenth, and eleventh causes of action, and denying it as to the first cause of action.  We also remand the matter to the trial court for a ruling on the request, made by Dunnion and Reeves in their motion to strike, for an award of attorney fees and costs.  The parties will bear their own costs on appeal.


_____
                                                                                              HILL, P. J.

WE CONCUR:


_____
GOMES, J.


_____
PEÑA, J.

19